918 A.2d 87 (2007)
COMMONWEALTH of Pennsylvania, ex rel. JUDICIAL CONDUCT BOARD, Petitioner,
v.
Deborah Shelton GRIFFIN, Respondent.
Supreme Court of Pennsylvania.
Argued October 16, 2006.
Decided March 26, 2007.
*88 Francis J. Puskas, II, Esq., Warren, for Commonwealth of Pennsylvania, ex rel. Judicial Conduct Board.
Samuel C. Stretton, Esq., West Chester, for Deborah Shelton Griffin.
BEFORE: CAPPY, C.J., and NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

OPINION
Chief Justice CAPPY.
Petitioner, the Judicial Conduct Board, brings an Application for Leave to File Original Process, seeking leave to proceed with a Complaint in Quo Warranto to declare Respondent, Deborah Shelton Griffin, unqualified for the Office of Judge of the Philadelphia Municipal Court of Philadelphia County. Upon receipt of the Application, this court directed the parties to brief and argue three questions: 1) Whether the Supreme Court of Pennsylvania has original jurisdiction over the quo *89 warranto action; 2) Whether the Judicial Conduct Board has standing to bring the quo warranto action; and, 3) Whether Respondent should be removed from the Office of Judge of the Philadelphia Municipal Court and be permanently prohibited from occupying or holding herself out as occupying such office and from receiving any compensation, expense, reimbursement, or other emolument of office.
For the reasons set forth herein, we find that the Supreme Court of Pennsylvania has original jurisdiction over an action in quo warranto brought against a Judge of the Philadelphia Municipal Court; however, the Judicial Conduct Board does not have standing to bring an action in quo warranto. Given our resolution of the second question, we will not address the third question briefed by the parties.
Prior to filing the present Application for Original Process, Petitioner requested that the District Attorney of Philadelphia County initiate an action in quo warranto. On November 4, 2004, the District Attorney refused. See Petitioner's Application for Leave to File Original Process, Exhibit A. Petitioner then requested that the Attorney General for the Commonwealth of Pennsylvania initiate an action in quo warranto. By letter dated April 28, 2005, the Attorney General declined. See Petitioner's Application for Leave to File Original Process, Exhibit B. Petitioner initiated the present action on September 7, 2005, challenging Respondent's qualifications to hold judicial office.
Germane to this action are two facts. First, Respondent is a Judge of the Philadelphia Municipal Court, having been elected for a six-year term to that position commencing in 2001. Second, in 1984 Respondent pled guilty to two felony counts of fraudulent use of a social security number, a violation of 42 U.S.C. § 408(g)(2)[1], in the United States District Court for the Southern District of New York.[2] With these two facts in hand, Petitioner asserts that by virtue of Respondent's felony convictions for crimen falsi offenses, Article II, Section 7 of the Pennsylvania Constitution bars Respondent from holding judicial office.[3] Petitioner moves forward with this challenge to Respondent's right to hold judicial office by seeking leave to proceed with an application for Original Process in the Supreme Court of Pennsylvania with a Complaint in quo warranto.
Respondent raises several arguments in response to Petitioner's actions. On the factual premise, Respondent asserts that because her guilty plea on the federal indictment resulted in a suspended sentence, there is no conviction of a crimen falsi offense under Pennsylvania law. Addressing the procedural aspects of the instant *90 action, Respondent avers that this court is without jurisdiction as a Judge of the Philadelphia Municipal Court is not a statewide judicial officer, and furthermore, that Petitioner does not have standing to bring an action in quo warranto.
The questions presented are questions of law; accordingly, our standard of review is de novo, and our scope of review is plenary. Buffalo Twp. v. Jones, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).
Our initial task is to determine the jurisdiction of this court to proceed. As this is a question of statutory construction, the Statutory Construction Act of 1972 ("Act"), 1 Pa.C.S § 1501 et seq., is controlling. The Act directs that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(1). In this regard, the Act sets forth two instructions. First, in 1 Pa.C.S. § 1921(b), the Act directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Second, in Pa.C.S.1921(c), the Act directs that "[w]hen the words of the statute are not explicit," the General Assembly's intent may be ascertained by considering specified matters which include the occasion and necessity for statute; circumstances of its enactment; mischief it remedies; object it seeks to attain; former law; consequences of particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations of statute.
42 Pa.C.S. § 721 provides in pertinent part:
The Supreme Court shall have original but not exclusive jurisdiction of all cases of:
* * * *
(3) Quo warranto as to any officer of Statewide jurisdiction.
Looking at the plain language of the statutory grant of jurisdiction to this court, the obvious inquiry is whether a judge of the Philadelphia Municipal Court is an officer of Statewide jurisdiction. Jurisdiction and venue of the Philadelphia Municipal Court is established in 42 Pa.C.S.A. § 1123, and the pertinent parts of that statute provide:
(b) Concurrent and exclusive jurisdiction.  The jurisdiction of the municipal court under this section shall be concurrent with the Court of Common Pleas of Philadelphia County except with respect to matters specified in subsection (a)(2) [relating to criminal offenses by any person other than a juvenile for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years], as to which the jurisdiction of the municipal court shall be exclusive except as otherwise prescribed by any general rule adopted pursuant to section 503.
(c) Venue and process.  The venue of the municipal court concerning matters over which jurisdiction is conferred by this section shall be prescribed by general rule. The process of the court shall extend beyond the territorial limits of the City and County of Philadelphia to the extent prescribed by general rule.
Referencing the jurisdictional framework above, each party argues a different outcome. Petitioner focuses on the concurrent jurisdiction of the municipal court to the court of common pleas to assert that Respondent is a statewide officer. Respondent relies on the limitation of the municipal court jurisdiction to Philadelphia County to conclude that a Philadelphia Municipal Judge is not a statewide officer.
The case of Collins v. Gessler, 452 Pa. 471, 307 A.2d 892 (1973), is instructive on *91 resolving the current jurisdictional contest. In Collins, a dispute arose over who was the lawful District Justice of the Peace for Magisterial District 32-1-10. The debate began when District Justice William J. Getty, Jr. was removed from serving as the Justice of the Peace for Magisterial District 32-1-10, by order of this court entered July 10, 1972, pursuant to Article V, Section 18(d) of the Pennsylvania Constitution.[4]Collins, 307 A.2d at 893. Shortly after District Justice Getty's removal from office, the Court of Common Pleas of Delaware County, wherein Magisterial District 32-1-10 was located, abolished the neighboring Magisterial District of 32-2-9. Id. The abolished Magisterial District was merged into and consolidated with Magisterial District 32-1-10. Joseph P. Gessler, who had been serving as the District Justice of the Peace for the abolished district, was designated to serve as the District Justice for the newly-merged District 32-1-10. The actions of the Delaware County Court of Common Pleas in creating the new district and designating Gessler as the District Justice thereof were approved by this court in an Order dated November 1, 1972. Id.
Subsequently, the Governor, unaware of the merger and designation of Gessler as District Justice for the newly created Magisterial District, appointed Arthur W. Collins to fill the vacancy caused by the removal of District Justice Getty for the office of District Justice of the Peace for Magisterial District 32-1-10. Id. Collins brought an action in quo warranto in the Commonwealth Court, seeking the removal of District Justice Gessler. Gessler filed preliminary objections to the Complaint in Quo Warranto, raising an objection to the jurisdiction of the Commonwealth Court, and asserting that jurisdiction lay in the Supreme Court of Pennsylvania in the first instance. The Commonwealth Court transferred the matter to this court for resolution of the jurisdictional question. Id. at 894.
Upon considering the jurisdictional dispute, the court began with Article V, Section 1 of the Pennsylvania Constitution, which provides for a "unified judicial system" that encompasses all courts and justices of the peace. Id. at 895. Justices of the peace are clearly designated as judicial officers within the statewide "unified judicial system." Id. Next, it was noted that the jurisdiction of the district justices is concurrent with that of judges in the court of common pleas. Id. Just as common pleas judges, district justices are empowered to issue subpoenas throughout the Commonwealth. Id.[5] The power to issue statewide subpoenas is a telling indication that the party possessing that power is an official with statewide jurisdiction. Id. Finally, looking to the decision in Commonwealth ex rel. v. Hyneman, 242 Pa. 244, 88 A. 1015 (1913), in which the court had declared that a common pleas judge is a statewide officer for purposes of investing original jurisdiction over an action in quo warranto in this court, the Collins court held:
[I]f our original jurisdiction is properly invoked in a quo warranto action involving a common pleas judge, because he has statewide jurisdiction, and a district *92 justice of the peace has concurrent jurisdiction, as mandated by statute, with that of a common pleas judge, it follows inexorably that this Court possesses original jurisdiction in a quo warranto proceeding involving a district justice of the peace.
307 A.2d at 895.
Taking our lead from Collins, we examine the jurisdiction of a Judge of the Philadelphia Municipal Court. Unquestionably, the Philadelphia Municipal Court is a designated part of the statewide unified judicial system as described in Article V, Section 1 of the Pennsylvania Constitution:
The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community court, municipal and traffic court in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.
Pa. Const. art. V. § 1 (emphasis supplied).
Within that constitutional framework of judicial organization, the Philadelphia Municipal Court was established at the same organizational level as Magisterial District Judges.[6] Pa. Const. art. V, § 1, chart. A judge in the Philadelphia Municipal Court has concurrent jurisdiction with the court of common pleas of Philadelphia County, and is imbued with statewide subpoena power. 42 Pa.C.S.A. § 1123. Respondent makes much of the fact that a municipal court judge's concurrent jurisdiction is limited to that of the Court of Common Pleas of Philadelphia County. The argument is that this geographic limitation distinguishes Philadelphia Municipal Court Judges from magisterial district judges. Additionally, Respondent points to the historical creation of the Philadelphia Municipal Court as a helpmate for the Court of Common Pleas in Philadelphia to assist in handling the large volume of litigation in that court. Reinhart v. Shirm, 18 D. & C. 151 (Pa.Mun., 1932). Stringing these points together, Respondent urges this court to conclude that the jurisdiction of a Philadelphia Municipal Court Judge was intentionally limited to Philadelphia County and therefore Respondent cannot be an officer of statewide jurisdiction for purposes of 42 Pa.C.S.A. § 721.
Taking Respondent's points in reverse order, we note that the historical purpose in creating the Philadelphia Municipal Court to aid in the volume of litigation burdening the court of common pleas may explain its origin, but fails to supply a reason for limiting the statewide jurisdiction of the municipal court judges. A similarly broad claim could be made in reference to all courts within the minor judiciary serving as helpmates to the common pleas courts of the county in which they sit. However, the volume of litigation within a county and the number of minor judicial officers created to serve therein, does not answer the question of whether or not the designated judicial officer is an officer of statewide jurisdiction.
Returning to Respondent's first point, in examining the statute establishing the jurisdiction of judges of the court of common pleas, 42 Pa.C.S.A. § 931, there is no distinction drawn between the jurisdiction of all judges in the courts of common pleas and that of judges in the court of common pleas of Philadelphia County. Unquestionably, a judge of the Philadelphia County *93 Court of Common Pleas is an officer of statewide jurisdiction and an action in quo warranto concerning a judge of that court would be in the original jurisdiction of the Supreme Court of Pennsylvania. See Hyneman, 88 A. at 1016. As a Philadelphia Municipal Court Judge has concurrent jurisdiction to a judge of the Court of Common Pleas of Philadelphia County, we find that a judicial officer of either court is an officer of statewide jurisdiction, and therefore, this court has jurisdiction to address an action in quo warranto seeking to remove a judge of the Philadelphia Municipal Court.
Having established the original jurisdiction of this court under 42 Pa.C.S. § 721, we turn to the standing of Petitioner to proceed with the Complaint in Quo Warranto. Standing is a core jurisprudential requirement that looks to the party bringing a legal challenge and asks whether that party has actually been aggrieved as a prerequisite before the court will consider the merits of the legal challenge itself. In re T.J., 559 Pa. 118, 739 A.2d 478, 481 (1999). A party who is not adversely affected by the matter he seeks to challenge is not "aggrieved" and therefore does not have standing. Id.
Quo warranto is a challenge to the title or right to public office. Andrezjwski v. Borough of Millvale, 543 Pa. 539, 673 A.2d 879, 881 (1996). Once a person has been duly elected, the right to exercise the authority of office is not to be lightly disturbed. A complaint in quo warranto is aimed at the right to exercise the powers of the office, which is a public injury, rather than an attack upon the propriety of the actions performed while in office, which would be a private injury. Accordingly, standing to pursue quo warranto is generally within a public entity such as, the Attorney General, or the local district attorney. Spykerman v. Levy, 491 Pa. 470, 421 A.2d 641, 648 (1980); Lehman v. Tucker, 470 Pa. 362, 368 A.2d 670, 672 (1977).[7] A private individual or entity is generally barred from bringing a quo warranto action; but a private petitioner will be deemed to have standing where that petitioner can show that it has been specially damaged or has some special right or interest. Spykerman, 421 A.2d at 649. see also In re One Hundred or More Qualified Electors of Clairton, 546 Pa. 126, 683 A.2d 283, 286-87 (1996) (finding qualified electors lacked standing to bring an action in quo warranto for failure to show an interest beyond that shared in common by all citizens of municipality).[8]
Petitioner argues that this history regarding quo warranto establishes that "Pennsylvania courts have repeatedly focused on preserving from intrusion the Commonwealth's standing in quo warranto by a private relator, not another Commonwealth *94 prosecutorial agency." Petitioner's brief at 16 (emphasis in the original). It states that these limitations placed on private parties' standing to bring actions in quo warranto are simply not applicable to it as it is not a private party; rather, Petitioner sees itself as being on an equal footing with a public prosecutor insofar as the ability to bring an action in quo warranto.
Petitioner correctly characterizes itself as possessing functions similar to that of prosecuting attorneys in the criminal justice system. The investigation and prosecution of complaints of judicial misconduct are its assigned task within the defined structure described in Article V, § 18. Yet, unlike the Attorney General or a district attorney, Petitioner is not an elected official charged with an obligation to the public at large. Rather, Petitioner is an appointed entity of limited scope, created within the judicial system itself and granted a deliberately precise function. Pa. Const. art. V, § 18(2), (6) & (7). Although the Petitioner functions in ways similar to a public prosecutor, the differences in origin of authority and scope of jurisdiction set it sufficiently apart from public prosecutors negating its assertion that it possesses standing to proceed in quo warranto similar to that of any public prosecutor. Additionally, nothing within its constitutional framework invests Petitioner with the power and authority to act in a public manner outside the confinement of its constitutionally-limited role, and this court would be remiss if we were to extend to Petitioner standing to pursue quo warranto on a par typical of that of public prosecutors.
Petitioner also asserts that it possesses standing as a governmental entity with a unique interest in this issue as it is was created to preserve the public confidence in the judicial system by ensuring a judiciary composed of officers of good character. In support of this argument, Petitioner relies heavily on Com., Pennsylvania Game Comm's v. Com., Dept. of Environmental Resources, 555 A.2d 812 (1989) and In re T.J., supra. In both of those matters, the issue was whether a legislatively-created administrative agency had standing even though it had not met the traditional standing requirements of being aggrieved or adversely affected. This court found that since the Legislature had conferred upon these agencies a broad interest, then the agencies had standing to pursue matters which touched upon the agencies' concerns. Pennsylvania Game Commission, 555 A.2d at 815; In re T.J., 739 A.2d at 482. Yet, Pennsylvania Game Commission and In re T.J. do not control this matter. Those cases granted standing to agencies which the Legislature had granted broad, policy-making authority. Petitioner, as noted supra, is a constitutionally-created entity of clearly delineated and limited authority.
Even though Pennsylvania Game Commission and T.J. do not control this matter, the next logical question would seem to be whether we should adopt a similar rule for the matter sub judice. We decline to do so. In 1993, the electorate approved of a constitutional amendment creating a brand new entity  to wit, Petitioner. From its inception, Petitioner's powers and authority were carefully delineated. See Pa. Const. Art. V, § 18. The constitutional provision at issue describes a self-contained system for the investigation, prosecution, and imposition of discipline in cases of judicial wrongdoing. Art. V, § 18(a)(7) (setting forth the investigative tools of the Judicial Conduct Board); Art. V, § 18(b)(5) (describing the functions of the Court of Judicial Discipline); Art. V, § 18(d)(1) (setting forth the available array of potential disciplinary actions within the authority of the Court of Judicial Discipline). *95 Yet, the electorate, in approving this amendment, did not grant Petitioner the power and authority to pursue actions in quo warranto. See Firing v. Kephart, 466 Pa. 560, 353 A.2d 833 (1976) (A provision of the constitution will be interpreted not in a strained or technical manner but as understood by the people who adopted it). As we find it to be improper to augment Petitioner's powers beyond that which the electorate granted via the constitutional amendment, we conclude that Petitioner does not have standing to pursue an action in quo warranto.[9]
Accordingly, the request to file original process is granted and the complaint in quo warranto is dismissed.
Justice CASTILLE and former Justice NEWMAN did not participate in the decision of this case.
Justice SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.
NOTES
[1] 42 U.S.C. § 408(g)(2) was redesignated as subsection (a)(7) in 1990.
[2] Copies of the relevant documents obtained from the National Archives and Records Administration regarding the indictment, plea and sentence are attached as Petitioner's Exhibit A to the Civil Action in Quo Warranto filed at 128 EM 2005.
[3] Pa. Const. art. II, § 7 provides:

No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth.
In Commonwealth ex rel. Baldwin v. Richard, 561 Pa. 489, 751 A.2d 647, 653 (2000), this court held that "[a] crime is infamous for purposes of Article II, Section 7, if its underlying facts establish a felony, a crimen falsi offense, or a like offense involving the charge of falsehood that affects the public administration of justice."
Because of the posture of this case, the court takes no position on the issue of whether the convictions cited above meet the definition of crimen falsi.
[4] The 1972 action involving District Justice Getty was in accord with the then-existing framework for judicial discipline under the Judicial Inquiry and Review Board. That framework was replaced with the current system, known as the Judicial Conduct Board, by constitutional amendment on May 18, 1993.
[5] The Rule cited in Collins is currently found at Pennsylvania Rules of Conduct, Office Standards, and Civil Procedure for Magisterial District Judges, Rule 214.
[6] District Justices were redesignated as Magisterial District Judges by Act 2004-207, Section 13 of 2004, Nov. 30, P.L. 1618, No. 207, effective Jan. 31, 2005.
[7] As noted previously, the Attorney General of the Commonwealth of Pennsylvania and the District Attorney of Philadelphia County each declined Petitioner's request to proceed with an action in quo Warranto in this case. See Petitioner's Application for Leave to file Original Process, Exhibits A and B.
[8] We note that Petitioner also references this court's decision in League of Women Voters of Lower Merion and Narberth v. Board of Commissioners of Lower Merion Twp., Montgomery Cty., 451 Pa. 26, 301 A.2d 797 (1973), claiming that it supports its position. League of Women Voters is not on point with this matter. While it is true that in that case the governmental entities declined to institute an action in quo warranto, that is where the similarities between that case and this one end. In that matter, there was no standing question. Furthermore, that matter was not a quo warranto action. In fact, we noted that "[t]he first argument that must be dealt with in this appeal is whether appellees' failure to bring their action in quo warranto is fatal to their cause." Id. at 799.
[9] Nothing in this opinion speaks to the authority of the Judicial Conduct Board to move forward with a complaint against Judge Griffin in its capacity as outlined in Pa. Const. art. V § 18.